STATE of Alaska, Appellant,

v.

NORTHERN BUS COMPANY, INC., Appellee.

No. 7079.

Supreme Court of Alaska.

Dec. 28, 1984.

Bruce M. Botelho, Asst. Atty. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

H. Clay Keene, Keene, Curral & Blasco, Ketchikan, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

OPINION ON REHEARING

RABINOWITZ, Justice.

In March of 1981 the Ketchikan Gateway Borough School District Board of Education (Board) accepted proposals for school bus transportation services for 1981–84. Three proposals were submitted.[1]

1. The three proposals were the following:
(1) Trans-Action Busing System at $154.00 per vehicle/day;

(2) Transportation Service, Inc. (TSI) at $192.25 per vehicle/day; and
(3) Northern Bus at $204.69 per vehicle/day.

Before accepting one of the proposals, the Board wrote to the Department of Education (DOE) asking what criteria the Board should use in making its choice. In its letter to DOE, the Board expressed its preference for Northern Bus, a company that had provided bus service to the District for approximately forty years. The Commissioner of Education directed the Board to choose the "lowest responsive proposal by a responsible proposer."

The Board met again and rejected Trans-Action's bid as non-responsive. Using the "lowest responsive proposal" ("LRP") standard, the Board recommended acceptance of TSI's proposal. Northern Bus, the third proposer, requested reconsideration of the Board's decision. The Board again wrote to DOE, this time requesting permission to negotiate with "a school busing proposer who in past years has offered services beyond the scope of the proposal invitation and whose services the district feels confident with." In its letter the Board offered to limit its reimbursement from the state (under AS 14.09.010(b)[2]) to the amount of TSI's proposal and to pay the difference between TSI's and Northern Bus' charges.

DOE denied the Board's request. The Board subsequently accepted TSI's proposal, the Commissioner approved the proposal, and the Board awarded TSI the contract.

Northern Bus initiated action against the state seeking a declaratory judgment that DOE's actions were unlawful in that DOE had no authority to require the Board to award the contract to the lowest responsible bidder. Both parties subsequently moved for summary judgment and the superior court granted Northern Bus' motion for summary judgment. The court concluded that DOE's directive that the Board apply the lowest responsive proposal by a responsible proposer standard in awarding its busing contract exceeded the plain language of the relevant regulation, 4 AAC 27.085,[3] and violated the competitive bid statute, AS 37.05.230,[4] which expressly exempts school busing contracts from the competitive bid criteria.

On appeal, the state argues that the superior court misconstrued the competitive bid statute, AS 37.05.230, and that DOE is not prohibited from requiring competitive bids in the awarding of school busing contracts under AS 14.09.010.

## II.

Under the "competitive bid" statute, AS 37.05.230,

> a contract for construction and repairs, or a purchase of and contract for supplies, materials, equipment, and contractual services must be based on competitive bids; an award shall be made to the lowest responsible bidder after advertising for bids. . . .

---

**2.** *See* note 7 *infra* for text of AS 14.09.010.

**3.** The text of 4 AAC 27.085 is set out in full in the appendix.

**4.** AS 37.05.230 provides in pertinent part:
*Competitive bids.* In the manner provided in this chapter and regulations established under it
(1) a contract for construction and repairs, or a purchase of and contract for supplies, materials, equipment, and contractual services must be based on competitive bids; an award shall be made to the lowest responsible bidder after advertising for bids, except that (A) a bid shall be awarded to an Alaska bidder if the bid is not more than five per cent higher than the lowest nonresident bidder's; and (B) competitive bids need not be required (i) for contractual services where no competition exists; (ii) for sales involving fair trade items;

(iii) when, in the judgment of the purchasing agent, food, clothing, or medical supplies, or materials for use in laboratory and experimental studies may be purchased otherwise to the best advantage of the state; (iv) where rates are fixed by law or ordinance; (v) for items traded in on like items; or (vi) for professional services;
. . . .
(4) the provisions of this section relative to competitive bids do not apply to contracts for the operation of transportation systems for students to and from the schools within the state, as are authorized under AS 14.09.010; and these contracts may be awarded by bid or negotiation and, at the discretion of the Board of Education, may be awarded for periods of three years or less;

However, the award of school busing contracts is explicitly exempted from this statute by subsection (4):

the provisions of this section relative to competitive bids do not apply to contracts for the operation of transportation systems for students to and from the schools within the state, as are authorized under AS 14.09.010; and these contracts *may be awarded by bid or negotiation* and, at the discretion of the Board of Education, may be awarded for periods of three years or less;

(Emphasis added.)

While AS 37.05.230(4) clearly provides that busing contracts may be awarded by bid or negotiation, it fails to specify who has the discretion to choose between those two methods in awarding any given contract. Neither DOE nor school boards are explicitly given the discretion to decide when a busing contract is to be awarded by bid or by negotiation.

Northern Bus argues that had the Legislature intended to grant the Department this discretion, the phrase "at the discretion of the Board of Education" would have modified the entire last clause of paragraph four, and not just the last phrase of the last clause. While this syntactical argument has some appeal, we think that the authority granted to DOE under AS 14.09.010 compels the conclusion that DOE additionally was granted the discretion to choose between bid and negotiation in awarding busing contracts.

Under AS 14.09.010,[5] DOE has authority to "provide for the transportation of pupils" by "requir[ing] school districts to enter into contracts with the department for the administration, supervision, operation or subcontracting of the operation of transportation systems for students to and from the schools." The competitive bid statute, AS 37.05.230, explicitly refers to AS 14.09.010 and specifically acknowledges DOE's discretion to award busing contracts for periods of three years or less.

DOE, pursuant to this statute, has promulgated a regulation which reflects its policy of awarding busing contracts based on competitive bidding. That regulation, 4 AAC 27.085, sets out the procedures for selecting a school bus contractor. Subsection (a) provides that "[a]ll contracts for pupil transportation awarded by the districts must be based on at least three competitive proposals." Subsection (g) provides that "[a]fter [the board] has determined by formal action, that a transporta-

---

**5.** AS 14.09.010 provides as follows:

*Transportation of pupils.* (a) The department may provide for the transportation of pupils who reside a distance from established schools, and in order to accomplish that purpose may

(1) require school districts to enter into contracts with the department for the administration, supervision, operation or subcontracting of the operation of transportation systems for students to and from the schools within their service area;

(2) require all school districts, transportation contractors and other recipients of state transportation funds to submit to the department an annual report, which includes a financial statement and other operational data required by the department;

(3) permit school districts to (A) establish supplementary systems of student transportation for students ineligible to utilize transportation facilities paid for by the state, (B) charge fares or fees for the supplementary transportation systems, and (C) use local tax funds to pay, in whole or in part, the cost of the supplementary system.

(b) Each school district mentioned in (a)(1) of this section is entitled to receive reimbursement from the state for the operation of the transportation system on a unit cost basis determined by the department.

(c) The school board of a district, or the department for areas not within school districts, shall designate as hazardous those routes which cannot be safely traveled by children not served by school bus. The designation may recognize hazards that exist only part of the time and in these instances the designation shall be applicable only during the time the hazards are found to exist. The board or the department shall provide for the transportation of pupils on routes designated as hazardous. The additional cost of the transportation in a district shall be shared equally by the district and the department. Eligibility to receive school bus service on routes designated as hazardous shall not be subject to restrictions based on the minimum distance between established schools and the residences of pupils.

tion contract is acceptable ... the board shall forward the proposal to the commissioner [of DOE] for his approval...." The remaining subsections deal with the mechanics of proposal contents and procedures. However, aside from its reference to "competitive proposals," the regulation offers no guidance as to what criteria a board should use to determine a proposal's acceptability.[6]

■ Northern Bus argues that the regulation's requirement that awards of busing contracts "be based on ... competitive proposals" is not tantamount to an imposition of the LRP criteria. There is some authority for this position. *See Doyal v. Waldrop*, 37 N.M. 48, 17 P.2d 939 (1932); *Leininger v. Ward*, 126 Okl. 114, 258 P. 863 (1927). However, we need not, and do not, decide that the term "competitive proposals" necessarily contemplates that an award go to the lowest responsible proposer. DOE's power to choose between bid and negotiation, while partially exercised through the regulation, does not arise from it, but derives instead from statute. In sum, our examination of the statutory guidelines for the award of school bus contracts persuades us that DOE has the discretion under AS 37.05.230(4) to decide whether negotiation or bidding is the appropriate method by which to award school busing contracts. We further conclude that DOE, having chosen to require bids, has discretion to require school boards to accept the lowest responsive proposal by a responsible proposer.

■ Northern Bus argues that investing DOE with such broad discretion fails to recognize the necessity of considering non-

monetary factors such as safety, facilities and equipment. We disagree. 4 AAC 27.085(a)(4) gives the individual school districts the opportunity to establish the requisite criteria of a responsive proposal. Pursuant to 4 AAC 27.085, the board could have requested that all proposers promise to employ only drivers who meet certain specific qualifications, equip their buses with radios, provide adequate garage facilities, and furnish whatever other services and equipment believed necessary for the safe transportation of students. In essence, boards can narrowly define the parameters of an acceptable proposal, specifying in detail what they desire. The fact that such a proposed invitation must be approved by the commissioner before publication does not render illusory a board's ability to shape the services it seeks according to its needs.

### III.

■ Northern Bus argues that even if DOE possessed the authority under AS 37.05.230(4) to select between bid and negotiation, DOE did not lawfully exercise that authority. Northern Bus characterizes DOE's directive to the Board to use LRP criteria as an attempt "to regulate, through policy, rather than adopt a proper regulation pursuant to the Administrative Procedures Act, AS 44.62.010–.150." DOE responds that the LRP standard is "embodied in 4 AAC 27.085" itself.

Regulations of DOE must be promulgated in accordance with the Administrative Procedure Act. AS 14.07.060.[7] The APA's definition of "regulation" is broad.[8] The

---

6. We note that the regulation has since been amended, and now allows for a busing contract to be awarded either
    (A) to the proposer whose responsive proposal contains the lowest dollar amount; or
    (B) to a proposer whose responsive proposal is within five percent of the responsive proposal with the lowest dollar amount if the proposer agrees to match the responsive proposal with the lowest dollar amount and the board determines that the offer to other than the low proposer is in the best interest of the district.
*See* 4 AAC 27.085(f)(1).

7. AS 14.07.060 provides:
    The [State] [B]oard [of Education] shall adopt regulations which are necessary to carry out the provisions of this title. All regulations shall be adopted under the Administrative Procedure Act.

8. AS 44.62.640(a)(2) provides:
    "[R]egulation" means every rule, regulation, order, or standard of general application or the amendment, supplement or revision of a rule, regulation, order or standard adopted by a state agency to implement, interpret, or make specific the law enforced or adminis-

question before us in this appeal is whether DOE's directive to the Board is a regulation, which was required to be promulgated pursuant to the procedures specified in the Administrative Procedure Act.

We are persuaded that DOE's directive to the Board reflected that agency's interpretation of 4 AAC 27.085. Northern Bus has not challenged the propriety of that regulation's promulgation. We conclude that DOE's interpretation of its own regulation does not fall within the APA's definition of "regulation", and therefore DOE was not required to follow APA-mandated procedures in issuing its directive to the Board.

In its May 27, 1981 letter to the Board, DOE indicated that it considered an award of a busing contract to anyone other than the lowest responsive proposer to be "erroneous" under the regulation. Before this court, DOE claims to have "repeatedly required school districts" to use the LRP standard in awarding busing contracts under 4 AAC 27.085. Thus, it is clear that DOE has interpreted the regulation to itself require LRP-based awards. Such an interpretation of an existing, valid regulation, on the facts of this case, does not trigger the procedures mandated by the APA.

■ Moreover, we are unpersuaded by Northern Bus' argument that DOE's interpretation of 4 AAC 27.085 goes beyond the scope of that regulation and effectively rewrites it. As we have recognized in prior cases,

> [a]n administrative agency's interpretation of its own regulation is normally given effect unless plainly erroneous or inconsistent with the regulation.

*Dept. of Highways v. Green,* 586 P.2d 595, 602 n. 21 (Alaska 1978) (citing 1A C. Sands, Sutherland Statutory Construction § 31.06, at 362 (4th ed. 1972)). *See also Tunley v. Municipality of Anchorage School District,* 631 P.2d 67, 78 (Alaska 1981). We cannot conclude that DOE's interpretation of 4 AAC 27.085 is either plainly erroneous or inconsistent with the regulation. While the regulation does not explicitly require use of the LRP standard, it does require competitive proposals, and provides for DOE approval of all busing contract awards. The regulation also provides for a public opening of all bids. 4 AAC 27.-085(d). Finally, the regulation provides that

> [i]f the [district school] board rejects all proposals, or less than three proposals have been received by March 1, the district may ... request permission from the commissioner [of DOE] to negotiate directly with a transportation contractor.

4 AAC 27.085(f). In our view, these provisions clearly support DOE's interpretation of the regulation. Having been granted the statutory authority to choose between bid and negotiation as methods for awarding busing contracts, DOE exercised that authority by promulgating this regulation. The regulation contemplates that bidding will normally be the method used to award such contracts, unless fewer than three proposals are submitted, or all proposals are rejected. Where, as here, three competitive proposals are received, DOE's interpretation of 4 AAC 27.085 as requiring an award to the lowest responsive proposer is neither inconsistent with the regulation nor plainly erroneous.

For the reasons expressed above, the decision of the superior court is REVERSED.

tered by it, or to govern its procedure, except one which relates only to the internal management of a state agency; "regulation" does not include a form prescribed by a state agency or instructions relating to the use of the form, but this provision is not a limitation upon a requirement that a regulation be adopted under this chapter when one is needed to implement the law under which the form is issued; "regulation" includes "manuals," "policies," "instructions," "guides to en-

forcement," "interpretative bulletins," "interpretations," and the like, which have the effect of rules, orders, regulations or standards of general application, and this and similar phraseology shall not be used to avoid or circumvent this chapter; whether a regulation, regardless of name, is covered by this chapter depends in part on whether it affects the public or is used by the agency in dealing with the public....